UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HERMAN GORDON,                                    Case No. 14-11990

        Plaintiff,                              Gerald E. Rosen
v.                                                United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                  Michael Hluchaniuk
                                                  United States Magistrate Judge
        Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS MOTIONS FOR SUMMARY JUDGMENT (Dkt. 14, 16)**

## I.   PROCEDURAL HISTORY

    A.   Proceedings in this Court

On May 19, 2014, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Gerald E. Rosen referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claims for period of disability, disability insurance benefits and supplemental security income.  (Dkt. 3).  This matter is before the Court on cross-motions for summary judgment.  (Dkt. 14, 16).

    A.   Administrative Proceedings

Plaintiff filed the instant claims on December 21, 2010, alleging that he was

1

disabled on October 21, 2008. (Dkt. 11-2, Pg ID 61). The claims were initially

disapproved by the Commissioner on May 4, 2011. *Id.* Plaintiff requested a

hearing and on December 28, 2012, plaintiff appeared with counsel before

Administrative Law Judge (ALJ), Michael R. Dunn who considered the case *de

novo*. (Dkt. 11-2, Pg ID 77-106). In a decision dated September 28, 2012, the

ALJ found that plaintiff was not disabled. (Dkt. 11-2, Pg ID 58-73). Plaintiff

requested a review of that decision, and the ALJ's decision became the final

decision of the Commissioner when, after review of additional exhibits, the

Appeals Council, on March 24, 2014, denied plaintiff's request for review. (Dkt.

11-2, Pg ID 32-36); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir.

2004).[1]

For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED** in part and **GRANTED** in

part, that defendant's motion for summary judgment be **DENIED** in part and

**GRANTED** in part, that the findings of the Commissioner be **AFFIRMED** in part

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

and **REVERSED** in part, and that this matter be **REMANDED** for further

proceedings under Sentence Four.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff was 44 years old on the application date.  (Dkt. 11-2, Pg ID 71).

Plaintiff's relevant work history included work as a cashier II, cleaner, and server.

(Dkt. 11-2, Pg ID 671).  The ALJ applied the five-step disability analysis to

plaintiff's claims and found at step one that plaintiff had not engaged in

substantial gainful activity since the application date.  (Dkt. 11-2, Pg ID 64).  At

step two, the ALJ found that plaintiff's degenerative disk disease of the lumbar

spine, schizoaffective disorders, dependent personality disorder, and HIV positive

status were "severe" within the meaning of the second sequential step.  *Id.*  At step

three, the ALJ found that plaintiff did not have an impairment or combination of

impairments that meets or medically equals the severity of one of the listed

impairments.  (Dkt. 11-2, Pg ID 64). The ALJ found that plaintiff has the

following RFC:

> After careful consideration of the entire record, the
> undersigned finds that the claimant has the residual
> functional capacity to perform light work as defined in
> 20 CFR 416.967(b) except the claimant would need a sit
> or stand option every 20 minutes; occasional stooping,
> crouching, kneeling, and crawling; could never climb
> ladders and scaffolds; should avoid all exposure to

3

> unprotected heights and hazardous machinery; would be
> limited to simple, routine, and repetitive unskilled tasks
> performed at an SVP of 1 or 2 as defined in the
> Dictionary of Occupational Titles, free of fast paced
> production requirements with few, if any, work place
> changes. The claimant could have nothing more than
> simple work related decisions required. He would be
> restricted to no interaction with the general public; only
> occasional interaction with coworkers and supervisors,
> with no tandem tasks.

(Dkt. 11-2, Pg ID 66).  At step four, the ALJ concluded that plaintiff could not

perform his past relevant work.  (Dkt. 11-2, Pg ID 71).  At step five, the ALJ

denied plaintiff benefits because he could perform a significant number of jobs

available in the national economy.  (Dkt. 11-2, Pg ID 71-72).

B.    Plaintiff's Claims of Error

According to plaintiff, the substantial evidence on the record demonstrates

that controlling weight was not given to the objective medical evidence.  Plaintiff

contends that the ALJ does not give any rationale for his decision, only conclusory

statements.  Plaintiff maintains that there is no discussion of the objective medical

evidence in the decision, no discussion of the factual basis for the decision, and

not a single discussion in the decision of special factors such as medication side

effects, fatigue, and pain, that plaintiff suffers from.  The ALJ states "there has

been no change in the claimant's mental condition since the prior decision..."

however, plaintiff says that the ALJ does not say how or why he came to that

conclusion or what medical evidence he relied on for that conclusion. (Tr. 36).

The ALJ rejects the treating physician medical opinions of both Dr. Washington and consultative examiner Dr. Qadir for those of a non-examining James Tripp as well as Dr. Cohen, the infectious disease specialist. (Tr. 38-39). Plaintiff asserts that this is legal error. As the doctor treating plaintiff's HIV, Dr. Cohen never examined plaintiff for any psychiatric conditions. And, plaintiff asserts that Dr. Tripp is a non-examining source hired by the SSA to deny claims. Plaintiff points out that Dr. Tripp offered his medical opinion a full 18 months prior to the ALJ decision without any benefit of the vast majority of medical records. (Tr. 108-110).

Without explanation, the ALJ states Dr. Washington's medical opinion "appear[s] sympathetic to the claimant." *Id*. According to plaintiff, the ALJ nitpicks through voluminous medical records in an attempt to discredit this long standing and well respected psychiatrist without explanation. The ALJ never backs any of his statements with credible facts or offers any explanation to his conclusion that Dr. Washington's medical opinions are for "sympathetic" reasons. In fact, the forms the ALJ is referring to give very detailed explanations for the objective reasons of Dr. Washington's medical opinions. He states that plaintiff has fatigue due to his multiple medications. (Tr. 473-476). Further, Dr. Washington states that his medical opinion is based on plaintiff's isolation,

5

dependence on his daughter, inability to think critically, as well as his flashbacks and hallucinations.  *Id*.  None of these factors were discussed by the ALJ in his decision.  The regulations provide that the medical opinion of a treating source is entitled to controlling weight only when it is: (a) supported by medically acceptable clinical and laboratory diagnostic techniques; and (b) not inconsistent with other substantial evidence in the record.  20 C.F.R. § 404.1527(d)(2); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  According to plaintiff, the ALJ points to no substantial evidence in the record to dispute Dr. Washington's medical opinions and makes vague references to GAF scores in an attempt to justify his RFC.  *Id*.  Plaintiff points out that GAF scores are subjective scores that each doctor uses as a snapshot and Social Security regulations do not place any emphasis on GAF scores.

Plaintiff also contends that the ALJ failed to examine plaintiff's daily routine which includes dependence on his daughter for nearly everything, including administering his medications.  Instead, the ALJ cherry-picks the medical records instead of looking at the longitudinal treatment of plaintiff.  When evaluating the opinions of treating physicians, the ALJ must also consider, under some circumstances, contacting the treating source for clarification:

Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the

6

Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion.  SSR 96-5p, 1996 WL 374183, *6; *see also* 20 C.F.R. §404.1527(c), 20 C.F.R. §404.1512(e); *Sims v. Apfel*, 530 U.S. 103, 110-111 (2000) (The ALJ has a duty to investigate the facts and develop the arguments both for and against granting benefits.); *D'Angelo v. Soc. Sec. Comm'r*, 475 F.Supp.2d 716 (W.D. Mich. 2007) (Where an ALJ discounts the opinions of a treating physician because the record includes virtually no medical records of plaintiff's treatment with that physician, the ALJ should perform a further investigation pursuant to SSR 96-5p.).  An ALJ has an affirmative duty under the law to perform further investigation pursuant to SSR 96-5p.

The regulations require the ALJ to give good reasons for the weight given to the treating source's opinion and, if this procedural requirement is not met, a remand may be required even if the decision is otherwise supported by substantial evidence.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544-45 (6th Cir. 2004). According to plaintiff, there were no reasons whatsoever that the ALJ gave for discounting medical opinions of Dr. Washington, let alone "good reasons" as stated by *Wilson*.  The ALJ states that the "symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."  (Tr.

7

36).  Plaintiff contends that it is unclear from the decision what is consistent with

Dr. Washington's medical opinion and what is inconsistent.  The medical records

are full of references to plaintiff's fatigue, pain, pain injections, memory problems,

and hallucinations.  According to plaintiff, the medical opinions of Dr.

Washington are corroborated by the objective medical evidence and the ALJ's

failure to give specific reasons and explain precisely how those reasons affected

the weight accorded the opinions is a legal error requiring reversal.

Plaintiff also claims that the ALJ never evaluates whether plaintiff, based on

claimant's combined physical and mental limitations, is capable of a competitive

work schedule i.e., 8 hour day, 40 hour work week.  This is required by SSR

96-8p:

> …the adjudicator must discuss the individual's ability to
> perform sustained work activities in an ordinary work
> setting on a regular and continuing basis (i.e., 8 hours a
> day, for 5 days a week, or an equivalent work schedule
> and describe the maximum amount of each work-related
> activity the individual can perform based on the evidence
> available in the case record. (footnote omitted).

Plaintiff contends that this was simply never done by the ALJ in his decision.

Rather, according to plaintiff, the ALJ slanted and even outright misstates the

evidence in his decision.

Plaintiff also asserts that the RFC determination by the ALJ did not

accurately portray plaintiff's physical and mental impairments and nonexertional

limitations.  ALJ determined that plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine; schizoaffective disorder; dependent personality disorder; and HIV positive.  (Tr. 33).  The ALJ further determined plaintiff had moderate restrictions in social functioning and concentration, persistence or pace.  (Tr. 34).  Despite the ALJ's severe impairment findings he determined plaintiff was able to perform light work.  (Tr. 25). The ALJ listed no objective medical evidence nor does the ALJ offer any analysis to his residual RFC determination. While the ALJ found lumbar degenerative disease as a severe impairment, plaintiff says it is unclear whether this severe impairment was supposed to encompass all of plaintiff's severe back impairments including his L4-L5 disk herniation and lumbar spondylosis.  In *Varley v. Secretary of HHS*, 820 F.2d, 777, 779 (6th Circuit 1987), the court stated that the RFC assessment must accurately portray the claimant's physical and mental impairments. According to plaintiff, the ALJ does not factor in his RFC determination his own previous conclusion that plaintiff has the severe impairments of degenerative disc disease of the lumbar spine; schizoaffective disorder; dependent personality disorder; and HIV positive.  Plaintiff asserts that there is not a scintilla of evidence to support his RFC assessment that plaintiff would be capable of light work on a sustained basis.

Plaintiff also contends that there was no evaluation by the ALJ as to

9

whether the plaintiff needed to lay down during unscheduled work breaks, the effect of his hallucinations, or concentration problems related to plaintiff's severe fatigue, memory, and pain issues.  The ALJ never in his decision rejects plaintiff's severe complaints in any satisfactory way nor does he dispute plaintiff's complaints.  The ALJ relies on the medical opinions of Dr. Tripp, again a non-examining source for the light RFC with a sit/stand option every 20 minutes, for his light RFC.  (Tr. 37).  According to plaintiff, Dr. Tripp was hired by the Administration for the sole reason of denying claimants. His medical opinion given a full 18 months prior to the decision and before the vast majority of medical records is the only reason given by the ALJ for his light RFC.  Plaintiff contends that this is legal error. Plaintiff says that there is no rationale in the decision whatsoever to describe how plaintiff can perform so much despite the severe impairments as determined by the ALJ in his decision.  Rather, the ALJ's sole reasoning is that in his determination plaintiff had "conservative treatment" for his lumbar degenerative disc disease, L4-L5 disk herniation, and lumbar spondylosis. (Tr. 37).  The ALJ assertion that lumbar injections, lumbar radio frequency ablation nerve block injections, and physical therapy is "conservative treatment" puzzles plaintiff.  According to plaintiff, the ALJ makes a broad statement to justify his RFC without any attempt at explaining his rationale and makes no attempt to reconcile the severe impairments with his given RFC determination.

10

According to Social Security Ruling 96-8p, the ALJ "must" discuss these issues and is not free to simply ignore the issue.  Social Security Ruling 96-8p, in a section entitled "Narrative Discussion Requirements" states as follows:

> The RFC Assessment must include a narrative discussion describing the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings and non-medical evidence (e.g., daily activities, observations).  In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary setting on a regular continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule.

Plaintiff maintains that the ALJ never complied or even attempted to reconcile Social Security Ruling 96-8p with his decision.  There is no mention in the RFC of the ALJ's findings that plaintiff has moderate limitations in concentration, persistence, or pace.  Once the ALJ found that plaintiff suffered from moderate limitations (more than slight limitation), he was then obligated under the law to factor those limitations into his RFC.  Plaintiff asserts that the ALJ never attempts to factor the moderate limitations in concentration into his RFC findings.  (Tr. 35). The medical records demonstrate plaintiff is an individual who cannot even take his medications without help from his daughter.  The ALJ did not adequately factor concentration, persistence, or pace into his RFC.  The ALJ's nondescript limitations in his decision of "simple, routine, and repetitive unskilled tasks" utterly fails to "accurately portray the individual's physical and mental

11

impairments as required under *Varley*." In *Ealy v. Commissioner of Social Security*, 594 F.3d 504, (2010), the Court stated that the hypothetical to the vocational expert must accurately describe the concentration limitations. In the instant case, the ALJ makes no attempt to accurately portray plaintiff's severe mental impairments and concentration problems. Under *Ealy*, the concentration deficits must be factored. *See e.g.*, *Green v. Comm'r of Soc. Sec.*, 2009 WL 2365557 at *10 (E.D. Mich. 2009) ("It is difficult to reasonably accept 'moderate' meaning anything less than 20%-30% of the time at work. Thus, 'moderate' concentration problems . . . need to be included or accommodated in some suitable fashion in the hypothetical question at Step 5 of that sequence.). Thus, plaintiff maintains that the ALJ failed to accommodate and accurately portray plaintiff's moderate concentration problems. According to plaintiff, when one considers the serious physical and emotional problems of plaintiff's, work does not exist in significant numbers that he can perform.

    C.    <u>The Commissioner's Motion for Summary Judgment</u>

According to the Commissioner, because substantial evidence supports the ALJ's decision, this Court should affirm it. At the outset, despite plaintiff's claims that the ALJ cited no evidence nor provided any analysis in the RFC, the ALJ's decision contains five to six pages of RFC analysis in which the ALJ thoroughly discussed the medical evidence. (Tr. 35-40). Thus, the Commissioner urges the

Court to disregard plaintiff's contention.  Moreover, the Commissioner maintains that the medical record supports the ALJ's decision.  Plaintiff characterized his back pain as both mild and moderate.  (Tr. 245, 420).  On several occasions, plaintiff's complaints did not match the results of physical examinations.  On January 28, 2011, plaintiff complained of mild lower back pain, but, on examination, he exhibited no tenderness, had normal balance and gait, and his extremities were also normal.  (Tr. 245, 247).  On multiple occasions, plaintiff claimed to have a limited range of motion in his spine, but exhibited a full range of motion on examination.  (Tr. 406-07, 409, 411, 421-22).  Plaintiff also exhibited normal strength, gait, and station.  (Tr. 407, 411, 422).  As noted by the ALJ (Tr. 37), the inconsistency between plaintiff's complaints and the objective evidence supports a finding that he is not disabled.  *See* 20 C.F.R. § 416.929(c)(4) ("We will consider . . . the extent to which there are any conflicts between your statements and the rest of the evidence . . . .").

Plaintiff argues that the ALJ improperly determined his credibility by characterizing the treatment of his back as conservative.  (Tr. 37).  The Commissioner points out that the ALJ need not accept plaintiff's claims at face value.  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) ("an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability.").

13

An ALJ's credibility assessment will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  Even though plaintiff disagrees with the ALJ's use of the term conservative, the ALJ clearly reviewed all the evidence, including plaintiff's pain injections, and the Court should affirm his determination.  (Tr. 37).  *See Reynolds v. Comm'r of Soc. Sec*., 424 Fed. Appx. 411, 417 (6th Cir. 2011) ("Furthermore, the ALJ accurately detailed [the claimant's] treatment history in the opinion, including the 'spinal blocks' and 'steroidal injections' she received. While the ALJ disagrees with [the claimant] about what is considered 'conservative treatment,' this does not mean he erred in assessing her credibility.").  In addition, the Commissioner asserts that plaintiff's activity level undermined his credibility.  In May 2011, plaintiff reported losing five pounds, which he attributed to "walking a lot."  (Tr. 319).

Plaintiff argues that the ALJ did not properly account for his mental limitations in the RFC because he failed to discuss his moderate restrictions in maintaining concentration, persistence or pace.  The Commissioner maintains that plaintiff's argument is without merit because the ALJ discussed plaintiff's moderate restrictions at Step 3.  (Tr. 34). The ALJ then found that plaintiff's RFC included limitations to simple tasks; a low stress environment, being defined as requiring no quick judgment or decision making; limited social interaction; and an environment free of fast-paced production.  (Tr. 35).  The ALJ's hypothetical to

14

the vocational expert essentially mirrored his RFC finding. (Tr. 70). In *Ealy v. Comm'r v. Soc. Sec.*, 594 F.3d 504, 516, the Sixth Circuit found that a hypothetical for simple work and limited social interaction did not properly capture the claimant's full impairments, which had limitations on the speed at which he could work. Thus, the Court ruled that a limitation to simple work might be insufficient to account for moderate deficiencies in concentration, persistence or pace. *Id*. According to the Commissioner, *Ealy* does not apply to the instant case because the ALJ's RFC finding and hypothetical included restrictions related to the speed at which plaintiff could work. The ALJ limited plaintiff to simple work in a non-production setting. (Tr. 35). An ALJ is not required to include the phrase "moderate deficiencies in concentration, persistence, and pace" or other talismanic language in the hypothetical or the RFC. *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir.2001). Numerous courts have held that a limitation to simple work in a non-production setting properly accounts for moderate difficulties in maintaining concentration, persistence or pace. *See Zizzo v. Comm'r of Soc. Sec.*, 2013 WL 5291663, at *13 (E.D. Mich. 2013); *see also Coleman v. Comm'r of Soc. Sec.*, 2013 WL 1316913, at * 12 (E.D. Mich. 2013) (holding that the ALJ sufficiently addressed Plaintiff's moderate limitations in concentration by restricting him to "non-production oriented" and "simple, unskilled work"); *Dietzel v. Comm'r of Soc. Sec.*, 2012 WL 3542493, at *1-2 (E.D. Mich. 2012)

15

(same).

Plaintiff alleges that the ALJ failed to comply with the narrative requirement of SSR 96-8p, 1996 WL 374184 (July 2, 1996). The Commissioner points out that the ALJ's RFC discussion was five to six pages long (Tr. 35-40), and the fact that the ALJ did not discuss every piece of evidence is not a valid reason to reverse the ALJ's decision. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party."); *Isaac v. Comm'r of Soc. Sec.*, 2013 WL 4042617, at *10 (E.D. Mich. 2013) (holding that the ALJ's four-page discussion satisfied the narrative requirement of SSR 96-8p despite the ALJ not discussing every piece of evidence claimant would have preferred the ALJ discuss).

While plaintiff asserts that not a scintilla of evidence supports the ALJ's decision, the Commissioner contends that plaintiff's position ignores the fact that it is his burden to prove his RFC. *See Isaac v. Comm'r of Soc. Sec.*, 2013 WL 4042617, at *10 (E.D. Mich. 2013) (Claimant's contention that "'[t]here is not a scintilla of evidence to support [the] RFC assessment that [claimant] would be capable of work at all exertional levels on a sustained basis" overlooks the fact that the burden to prove impaired function is on the [claimant]."); *see also Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994) (holding

16

that plaintiff has the burden of proof through step 4 of the sequential evaluation).

In addition, plaintiff argues that the ALJ violated SSR 96-8p because the ALJ

failed to discuss whether Plaintiff could work a full-time schedule.  The

Commissioner points out that a similar argument from plaintiff's counsel has been

rejected:

> Finally, plaintiff argues that the ALJ violated SSR 96-8p,
> claiming that the ALJ failed to evaluate whether plaintiff
> was capable of working a competitive work schedule.
> However, "[a]lthough a function-by-function analysis is
> desirable, SSR 96-8p does not require ALJs to produce
> such a detailed statement in writing."

*See Delgado v. Comm'r of Soc. Sec.*, 30 Fed. Appx. 542, 547 (6th Cir. 2002) . . .

The ALJ is not required to discuss those capacities for which no limitation is

alleged.  *Id*.  "[T]he ALJ need only articulate how the evidence in the record

supports the RFC determination, discuss the claimant's ability to perform

sustained work-related activities, and explain the resolution of any inconsistencies

in the record."  *Id*.  Here, the Commissioner asserts that the ALJ discussed the

medical and other evidence on the disputed issues and his narrative discussion

adequately explained the basis of plaintiff s RFC.  The ALJ thus sufficiently

articulated his residual functional capacity finding under SSR 96-8p.  For these

reasons, and because a review of the ALJ's decision and the administrative record

reveals that the ALJ's decision is well-supported by substantial evidence, the

17

Commissioner maintains that plaintiff's claim of error should be rejected. *Tobey v. Comm'r of Soc Sec.*, 2013 WL 1010727, at *11 (E.D. Mich. 2013) (M.J. Hluchaniuk) adopted by 2013 WL 1016736 (E.D. Mich. 2013).

The Commissioner also contends that the ALJ properly evaluated the medical opinion evidence. Plaintiff alleges that the ALJ committed reversible error by failing to accord controlling weight to the opinion of Dr. Washington, the psychologist who oversaw his treatment. The medical opinion of a treating source, such as Dr. Washington, is entitled to "controlling weight" only if both of the following two elements are satisfied: (1) it is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques,'" and (2) it is "'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009), quoting 20 C.F.R. § 404.1527(c)(2)). In the event that both of these elements are not satisfied, "'[i]t is an error to give an opinion controlling weight.'" *Id.*, quoting SSR 96-2p, 1996 WL 374188, at *2); *see also*, *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993) ("This court has consistently stated that the [Commissioner] is not bound by the treating physician's opinions, and that such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence.").

According to the Commissioner, the ALJ properly discounted Dr.

Washington's opinion because it conflicted with the evidence. (Tr. 38). While receiving other medical services, plaintiff repeatedly exhibited no psychiatric symptoms and otherwise had normal mental status exams. (Tr. 233-34, 237, 247, 309, 321, 407, 435). In addition, the record shows that plaintiff's condition improved. On August 6, 2010, plaintiff was stable on his medication, had no complaints, was cooperative, exhibited no overt mood or thought disorder, and denied any suicidal thoughts. (Tr. 292). On October 8, 2010, plaintiff was stable on his medication, had no complaints, was cooperative, exhibited no overt mood or thought disorder, and denied any suicidal thoughts. (Tr. 296). On August 8, 2011, plaintiff was alert; had spontaneous, coherent, productive, and logical speech; displayed normal psychomotor activity; reported auditory hallucinations; had intact memory; and had fair decision making and impulse control. (Tr. 374-76). On April 9, 2012, appeared euthymic, pleasant, and cooperative, and he reported that his mood was good and stable. (Tr. 393). On June 8, 2012, plaintiff was in good spirits and exhibited no side effects from his medication. (Tr. 398). On July 18, 2012, plaintiff reported a reduction in his auditory hallucinations, and appeared well dressed, alert, cooperative, and pleasant. (Tr. 449). On August 8, 2012, plaintiff was pleasant, cooperative, well dressed and euthymic; had normal speech; denied depression; denied hallucinations; and denied suicidal ideation. (Tr. 445).

19

In addition to showing that his condition improved, according to the Commissioner, the record shows that plaintiff was not as limited socially as he claims. On July 6, 2010, he reported that he had good family support, and attended church every Sunday. (Tr. 261). On April 9, 2012, plaintiff reported that he received good support from his family, socialized with friends daily, and attended church weekly. (Tr. 325). On July 18, 2012, he reported attending church weekly. (Tr. 449). The Commissioner points out that this evidence conflicts with his testimony that he did not attend church and Dr. Washington's opinion that plaintiff had significant limitations in social functioning. (Tr. 65, 476).

Plaintiff also argues that the ALJ erred by mentioning the GAF score assessed by Dr. Washington in his opinion. According to the Commissioner, the ALJ merely pointed out plaintiff's GAF score in order to show the internal inconsistency of Dr. Washington's opinion. (Tr. 38-39). In October 2012, Dr. Washington assessed plaintiff with a GAF score of 55. (Tr. 473). A GAF score of 50 or greater is generally consistent with an ability to work. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007). The assessed GAF score was inconsistent with the rest of Dr. Washington's opinion, which contained several extreme limitations. (Tr. 475-76).

The opinion of Dr. Tripp also supports the ALJ's decision. On May 4,

20

2011, Dr. Tripp, a non-examining medical psychological consultant, reviewed

plaintiff's records, and opined that he had no more than moderate limitations

resulting from his medically determinable impairments. (Tr. 108-10). Dr. Tripp

further opined that plaintiff was capable of performing unskilled work that did not

involve contact with the public and only involved limited contact with supervisors

and co-workers; and that he could work in a nonproduction rate environment. (Tr.

35-36, 110); *see* 20 C.F.R. § 416.927(e) and SSR 96-6p, 1996 WL 374180 (July 2,

1996) (stating that the opinion of a non-examining state agency medical source,

insofar as it is supported by evidence in the case record, is recognized as that of a

highly qualified physician who is an expert in the evaluation of the medical issues

in disability claims under the Act.); *Smith v. Schweiker*, 795 F.2d 343, 346 (4th

Cir. 1986) ("[T]he testimony of a non-examining physician can be relied upon

when it is consistent with the record"). Plaintiff argues that the ALJ could not rely

on Dr. Tripp's opinion because the Commissioner hired Dr. Tripp for the sole

purpose of denying claims. This Court has rejected a similar argument raised by

plaintiff's counsel:

> Plaintiff further complains that the ALJ relied on the
> opinions of the state agency physicians . . . who she
> describes as "[a] doctor clearly paid by Social Security
> with the sole purpose of denying Plaintiff benefits." . . .
> However, state agency doctors are "highly qualified
> physicians and psychologists who are experts in the
> evaluation of the medical issues in disability claims

under the Act." See 20 C.F.R. § § 404.1527(e)(2)(I),
416.927(e)(2)(I). "In appropriate circumstances, opinions
from State agency medical and psychological consultants
and other program physicians and psychologists may be
entitled to greater weight than the opinions of treating or
examining sources." SSR 96–6p, 1996 WL 374180, at
*3 (1996); see also *Blakley v. Comm'r of Soc. Sec.*, 581
F.3d 399, 409 (6th Cir. 2009) ("Certainly, the ALJ's
decision to accord greater weight to state agency
physicians over Blakley's treating sources was not, by
itself, reversible error.")

*Thomas v. Comm'r of Soc. Sec.*, 2013 WL 4550198, at *13 (E.D. Mich. 2013).

Plaintiff also argues that, by discounting Dr. Washington's opinion, the ALJ

triggered a duty to re-contact the providers. "[A]n Administrative Law Judge need

recontact a medical source only if the evidence received from that source is

inadequate for a disability determination." *DeBoard v. Comm'r of Soc. Sec.*, 2006

WL 3690637, *5 (6th Cir. 2006) (citing 20 C.F.R. § 404.1512). "Absent a gap in

the record, the ALJ has no duty to recontact the physician." *Starkey v. Comm'r of

Soc Sec.*, 2008 WL 828861, *4 (W.D. Mich. 2008). The Commissioner maintains

that plaintiff has failed to demonstrate how, in any way, the record was

insufficient, as to render it impossible for the ALJ to make a decision. "The duty

to recontact is triggered when the evidence is insufficient to make an informed

determination, not when the evidence is insufficient to make a favorable

determination." *Daniels v. Astrue*, 2010 WL 599634, at *2 (E.D. Ky. 2010)

(quotation omitted). Thus, according to the Commissioner, the evidence in this

case was sufficient, and the ALJ did not need re-contact Dr. Washington.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case

23

de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in

the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508

25

(6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.   <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.).  Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or

which has lasted or can be expected to last for a
continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without
> further analysis.
>
> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.
>
> Step Four:  If the claimant is able to perform his or her
> past relevant work, benefits are denied without further
> analysis.
>
> Step Five: Even if the claimant is unable to perform his
> or her past relevant work, if other work exists in the
> national economy that plaintiff can perform, in view of
> his or her age, education, and work experience, benefits
> are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

28

C.   Analysis and Conclusions

1.   Physical Impairments

The ALJ determined that, as to plaintiff's physical impairments, the newly submitted evidence since the last administrative decision suggested that plaintiff's physical condition had deteriorated and thus, the prior RFC was no longer appropriate.  (Dkt. 11-2, Pg ID 67).  In this case, the Single Decisionmaker (SDM) model was used pursuant to 20 C.F.R. § 404.906(b)(2).  This regulation provides streamlined procedures as an experiment, in which State Agency disability examiners may decide cases without documenting medical opinions from State Agency medical consultants.  The "single decisionmaker model" was an experimental modification of the disability determination process that happens to have been used in Michigan.  *See Leverette v. Comm'r*, 2011 WL 4062380 (E.D. Mich. 2011).  This experiment eliminated the reconsideration level of review and allowed claims to go straight from initial denial to ALJ hearing.  *Id*.  Most significantly, it allowed the state agency employee (the single decisionmaker) to render the initial denial of benefits without documenting medical opinions from the state agency medical consultants.  *Id*., citing 20 C.F.R. §§ 404.906(b)(2), 416.1406(b)(2).  The Programs Operations Manual System (POMS) requires it to "be clear to the appeal-level adjudicator when the SSA-4734-BK [the PRFC assessment form] was completed by an SDM because SDM-completed forms are

not opinion evidence at the appeal levels." POMS DI § 24510.05. Plaintiff's

physical impairments were evaluated by an SDM, Christopher Connors. (Dkt. 11-

3, Pg ID 143). Thus, no medical opinion for plaintiff's physical impairments was

obtained at this level of review, in accordance with this model.

While the ALJ did not rely on the opinion of the SDM, which would have

been wholly improper, the lack of any medical opinion on the issue of equivalence

is still an error requiring remand. As set forth in *Stratton v. Astrue*, 2012 WL

1852084, *11-12 (D. N.H. 2012), SSR 96-6p describes the process by which ALJs

are to make step-three determinations:

> The administrative law judge ... is responsible for
> deciding the ultimate legal question whether a listing is
> met or equaled. As trier of the facts, an administrative
> law judge ... is not bound by a finding by a State agency
> medical or psychological consultant or other program
> physician or psychologist as to whether an individual's
> impairment(s) is equivalent in severity to any impairment
> in the Listing of Impairments. However, *longstanding
> policy requires that the judgment of a physician* (or
> psychologist) designated by the Commissioner *on the
> issue of equivalence on the evidence* before the
> administrative law judge ... *must be received into the
> record as expert opinion evidence and given appropriate
> weight*.

1996 WL 374180, at *3 (emphasis added); *Barnett v. Barnhart*, 381 F.3d 664, 670

(7th Cir. 2004) ("Whether a claimant's impairment equals a listing is a medical

judgment, and an ALJ must consider an expert's opinion on the issue.") (citing 20

C.F.R. § 1526(b)); *Retka v. Comm'r of Soc. Sec.*, 1995 WL 697215, at *2 (6th Cir.

1995) ("Generally, the opinion of a medical expert is required before a

determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b));

*Modjewski v. Astrue*, 2011 WL 4841091, at *1 (E.D. Wis. 2011) (warning that an

ALJ who makes a step-three equivalence determination without expert-opinion

evidence runs the risk of impermissibly playing doctor).

The *Stratton* court further explains that SSR 96-6p treats equivalence

determinations differently from determinations as to whether an impairment meets

a listing, requiring expert evidence for the former, but not the latter. *Id.* at *12;

citing *Galloway v. Astrue*, 2008 WL 8053508, at *5 (S.D. Tex. 2008) ("The basic

principle behind SSR 96-6p is that while an ALJ is capable of reviewing records

to determine whether a claimant's ailments meet the Listings, expert assistance is

crucial to an ALJ's determination of whether a claimant's ailments are equivalent

to the Listings.") (citation and quotation marks omitted).  This expert opinion

requirement can be satisfied by a signature on the Disability Determination

Transmittal Form.  *Stratton*, at *12, citing SSR 96-6p, 1996 WL 374180, at *3

(The expert-opinion evidence required by SSR 96-6p can take many forms,

including "[t]he signature of a State agency medical ... consultant on an SSA-831-

U5 (Disability Determination and Transmittal Form)."); *Field v. Barnhart*, 2006

WL 549305, at *3 (D. Me. 2006) ("The Record contains a Disability

31

Determination and Transmittal Form signed by Iver C. Nielson, M.D ....
discharging the commissioner's basic duty to obtain medical-expert advice
concerning the Listings question."). There is no Disability Determination and
Transmittal Form signed by a medical advisor as to plaintiff's physical
impairments in this record. (Dkt. 11-3, Pg ID 134).

The great weight of authority[2] holds that a record lacking any medical
advisor opinion on equivalency requires a remand. *Stratton*, at \*13 (collecting
cases); *see e.g. Caine v. Astrue*, 2010 WL 2102826, at \*8 (W.D. Wash. 2010)
(directing ALJ to obtain expert-opinion evidence on equivalence where none was
in the record); *Wadsworth v. Astrue*, WL 2857326, at \*7 (S.D. Ind. 2008) (holding
that where record included no expert-opinion evidence on equivalence, "[t]he ALJ
erred in not seeking the opinion of a medical advisor as to whether Mr.
Wadsworth's impairments equaled a listing").

While the government has argued in other cases that courts in this district
have concluded that the ALJ need not obtain expert opinion evidence in cases
involving an SDM, *see Gallagher v. Comm'r*, 2011 WL 3841632 (E.D. Mich.
2011) and *Timm v. Comm'r*, 2011 WL 846059 (E.D. Mich. 2011), the undersigned

---

[2] In *Stratton*, the court noted that a decision from Maine "stands alone" in determination
that 20 C.F.R. § 404.906(b) "altered the longstanding policy that an ALJ is required to seek a
medical opinion on the issue of equivalence." *Id.*, citing *Goupil v. Barnhart*, 2003 WL 22466164,
at \*2 n. 3 (D. Me. 2003).

does not find these cases persuasive.  In both cases, the court concluded that because the regulations permitted an SDM to make disability determination without a medical consultant that the ALJ is, therefore, also permitted to do so where the "single decisionmaker" model is in use.  Nothing about the SDM model changes the ALJ's obligations in the equivalency analysis.  *See Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) ("Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue.") (citing 20 C.F.R. § 1526(b)); *Retka v. Comm'r of Soc. Sec.*, 1995 WL 697215, at *2 (6th Cir. 1995) ("Generally, the opinion of a medical expert is required before a determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b)).

Based on the foregoing, the undersigned cannot conclude that the ALJ's obligation to consult a medical expert in making an equivalency determination is any different in a case where the SDM model is used.  While the SDM is not required to obtain a medical opinion in cases involving physical impairment, as noted in *Timm* and *Gallagher*, nothing appears to have modified the ALJ's obligations and it makes little sense to conclude that the ALJ is relieved from obtaining an expert medical opinion in SDM cases.  Thus, the undersigned's analysis does not alter the SDM model, which leaves the SDM discretion as to whether a medical expert is consulted as to physical impairments.  Rather, the

33

undersigned's analysis leaves intact the requirements imposed on an ALJ in making an equivalency determination, which do not otherwise appear to be modified by the SDM model.  *See also*, *Maynard v. Comm'r*, 2012 WL 5471150 (E.D. Mich. 2012) ("[O]nce a hearing is requested, SSR 96-6p is applicable, and requires a medical opinion on the issue of equivalence."); *Harris v. Comm'r*, 2013 WL 1192301, *8 (E.D. Mich. 2013) (A medical opinion on the issue of equivalence is required, regardless of whether the SDM model is implicated.). Thus, remand is also required to obtain a medical opinion on equivalence.

Similarly, there is no consulting physician opinion in the record regarding plaintiff's physical functional limitations.  Indeed, no treating physician or any other consulting or examining physician offered any opinions regarding plaintiff's functional limitations resulting from his significant physical impairments.  Thus, we are also left with the circumstance of the ALJ interpreting raw medical data without the benefit of an expert medical opinion.  Importantly, in weighing the medical evidence, "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'"  *Simpson v. Comm'r of Soc. Sec*., 344 Fed.Appx. 181, 194 (6th Cir. 2009), quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996).  Accordingly, "an ALJ may not substitute his [or her] own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence." *Id*. (internal quotations

34

omitted); *see also Bledsoe v. Comm'r of Social Sec.*, 2011 WL 549861, at *7 (S.D. Ohio 2011) ("An ALJ is not permitted to substitute her own medical judgment for that of a treating physician and may not make her own independent medical findings."); *Mason v. Comm'r of Soc. Sec.*, 2008 WL 1733181, at *13 (S.D. Ohio Apr. 14, 2008) ("The ALJ must not substitute his own judgment for a doctor's conclusion without relying on other medical evidence or authority in the record."). In other words, "[w]hile an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, the ALJ cannot substitute his [or her] own lay 'medical' opinion for that of a treating or examining doctor." *Beck v. Comm'r of Soc. Sec.*, 2011 WL 3584468, at *14 (S.D. Ohio June 9, 2011), *adopted by* 2011 WL 3566009 (S.D. Ohio Aug. 12, 2011).

The undersigned recognizes that the final responsibility for deciding the RFC "is reserved to the Commissioner." 20 C.F.R. § 404.1527(d). Nevertheless, courts have stressed the importance of medical opinions to support a claimant's RFC, and cautioned ALJs against relying on their own expertise in drawing RFC conclusions from raw medical data. *See Isaacs v. Astrue*, 2009 WL 3672060, at *10 (S.D. Ohio 2009) ("The residual functional capacity opinions of treating physicians, consultative physicians, and medical experts who testify at hearings are crucial to determining a claimant's RFC because '[i]n making the residual functional capacity finding, the ALJ may not interpret raw medical data in

functional terms.'"), quoting *Deskin v. Comm'r Soc. Sec.*, 605 F. Supp.2d 908, 912 (N.D. Ohio 2008); *see also Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person, however, the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the [RFC] determination."); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985) ("By independently reviewing and interpreting the laboratory reports, the ALJ impermissibly substituted his own judgment for that of a physician; an ALJ is not free to set his own expertise against that of a physician who presents competent evidence.").

Although ultimately a finding of no disability may be appropriate in this case, substantial evidence does not exist on the record to support the current RFC determination because there is no RFC determination by a consulting physician or expert medical advisor. Thus, the ALJ's RFC determination (at least in part) was not based on any medical opinion but was apparently formulated based on his own independent medical findings. Under these circumstances, the undersigned suggests that a remand is necessary to obtain a proper medical source opinion to support the ALJ's residual functional capacity finding as to plaintiff's physical limitations.

Given the need for remand to obtain an expert medical opinion on plaintiff's physical impairments and resulting functional limitations, plaintiff's credibility

will necessarily have to be re-evaluated on remand. While the ALJ sufficiently articulated his residual functional capacity finding under SSR 96-8p by discussing the medical and other evidence on the disputed issues, the ALJ will necessarily have to revamp his narrative discussion based on the new opinions from an expert medical advisor obtained on remand.

### 2. Mental Impairments

As to plaintiff's mental impairments, the ALJ concluded that there had been no change since the last administrative decision and thus, the RFC in this regard remained the same. In this regard, the ALJ gave limited weight to the opinions of plaintiff's treating physician, Dr. Washington, concluding that his opinions were inconsistent with the treatment records of other providers and the psychiatric treatment records. The Commissioner points out that while receiving other medical services, plaintiff repeatedly exhibited no psychiatric symptoms and otherwise had normal mental status exams. (Tr. 233-34, 237, 247, 309, 321, 407, 435). Plaintiff's psychiatric records also show that his condition improved. On August 6, 2010, plaintiff was stable on his medication, had no complaints, was cooperative, exhibited no overt mood or thought disorder, and denied any suicidal thoughts. (Tr. 292). On October 8, 2010, plaintiff was stable on his medication, had no complaints, was cooperative, exhibited no overt mood or thought disorder, and denied any suicidal thoughts. (Tr. 296). On August 8, 2011, plaintiff was

alert; had spontaneous, coherent, productive, and logical speech; displayed normal psychomotor activity; reported auditory hallucinations; had intact memory; and had fair decision making and impulse control.  (Tr. 374-76).  On April 9, 2012, appeared euthymic, pleasant, and cooperative, and he reported that his mood was good and stable.  (Tr. 393).  On June 8, 2012, plaintiff was in good spirits and exhibited no side effects from his medication.  (Tr. 398). On July 18, 2012, plaintiff reported a reduction in his auditory hallucinations, and appeared well dressed, alert, cooperative, and pleasant.  (Tr. 449).  On August 8, 2012, plaintiff was pleasant, cooperative, well dressed and euthymic; had normal speech; denied depression; denied hallucinations; and denied suicidal ideation.  (Tr. 445).

In addition to showing that his condition improved, the undersigned agrees with the Commissioner's observations that the record shows that plaintiff was not as limited socially as he claims.  On July 6, 2010, he reported that he had good family support, and attended church every Sunday.  (Tr. 261).  On April 9, 2012, plaintiff reported that he received good support from his family, socialized with friends daily, and attended church weekly.  (Tr. 325).  On July 18, 2012, he reported attending church weekly.  (Tr. 449).  This evidence conflicts with his testimony that he did not attend church and Dr. Washington's opinion that plaintiff had significant limitations in social functioning.  (Tr. 65, 476).  And, the ALJ's decision is supported by the opinions of Dr. Tripp, an experienced social security

38

expert.  Despite plaintiff's protestations to the contrary, the ALJ was entitled to
rely on Dr. Tripp's opinions.

While there may be evidence in the record that is contrary to the ALJ's
ultimate conclusions – such as plaintiff's need for assistance by his daughter –
there still remains substantial evidence to support the ALJ's conclusions regarding
plaintiff's mental impairments and resulting functional limitations.   Plaintiff
accuses the ALJ of improperly ignoring evidence supporting a finding of
disability.   It is generally recognized that an ALJ "may not cherry-pick facts to
support a finding of non-disability while ignoring evidence that points to a
disability finding."  *Smith v. Comm'r of Soc. Sec.*, 2013 WL 943874, at *6 (N.D.
Ohio 2013), citing *Goble v. Astrue*, 385 Fed. Appx. 588, 593 (7th Cir. 2010)
(citation omitted).  Yet, "the ALJ does not 'cherry pick' the evidence merely by
resolving some inconsistencies unfavorably to a claimant's position."  *Id*., quoting
*Solembrino v. Astrue*, 2011 WL 2115872, at *8 (N.D. Ohio 2011).  The
undersigned cannot conduct a de novo review of the record evidence, and the
findings of the ALJ are not subject to reversal merely because there exists in the
record substantial evidence to support a different conclusion.  *Buxton v. Halter*,
246 F.3d 762, 772-73 (6th Cir. 2001) (citation omitted); *see also Her v. Comm'r of
Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also
support another conclusion, the decision of the [ALJ] must stand if the evidence

39

could reasonably support the conclusion reached.") (citation omitted).  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.  *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  Thus, it is not uncommon in disability cases for there to be some inconsistencies in the record.  It is the duty of the ALJ to resolve any inconsistencies in the evidence, and the ALJ does not "cherry pick" the evidence merely by resolving some inconsistencies unfavorably to a claimant's position.  *See Smith*, 2013 WL 943874, at *6 ("Rather than describing the ALJ's actions as 'cherry-picking,' the Sixth Circuit has explained that it could be more neutrally described as 'weighing the evidence.'"), citing *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009).  In the view of the undersigned, that is precisely what the ALJ did here.  He weighed the evidence and made a determination, supported by substantial evidence, that plaintiff is not disabled by his mental impairments.

Finally, there was no duty to re-contact Dr. Washington as alleged by plaintiff.  Under SSR 96-5p, an ALJ should make reasonable efforts to contact a treating physician for clarification only "when 'the evidence does not support a treating source's opinion . . . and the adjudicator cannot ascertain the basis of the opinion from the record.'"  *See Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 275 (6th Cir. 2010), quoting SSR 96-5p, 1996 WL 374183, at *6.  But the ALJ's

40

recontact obligation is triggered "only when the information received is
*inadequate* to reach a determination on claimant's disability status, not where . . .
the ALJ rejects the limitations recommended by that physician." *Poe v. Comm'r
of Soc. Sec.*, 342 Fed. Appx. 149, 157 (6th Cir. 2009) (emphasis added).

Here, the ALJ assigned limited weight to Dr. Washington's opinion because
it was inconsistent with the record evidence, not because the basis of his
assessment was unclear.  "Rejecting the limitations as inconsistent with objective
evidence amounts to a decision on the merits of the claim; it does not imply a
circumstance that triggers the ALJ's duty to recontact the treating sources."
*Burnett v. Comm'r of Soc. Sec.*, 2012 WL 3870362, at *5 (E.D. Mich. 2012),
citing *Ferguson*, 628 F.3d at 274 (finding ALJ's recontact obligation not triggered
where "Dr. Erulkar's opinion was deemed unpersuasive not because its bases were
unclear, but because they were not corroborated by objective medical evidence")).
"The ALJ has discretion to determine whether additional evidence is necessary."
*Ferguson*, 628 F.3d at 275.  Here, the ALJ's comprehensive opinion demonstrates
that he carefully considered the entire record in this case, including Dr.
Washington's opinion; that he identified substantial evidence supporting the
determination that plaintiff was not disabled; and that he did not abuse his
discretion in failing to recontact Dr. Washington, because the bases for his opinion
were not unclear or ambiguous.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED** in part and **GRANTED** in part, that defendant's motion for summary judgment be **DENIED** in part and **GRANTED** in part, that the findings of the Commissioner be **AFFIRMED** in part and **REVERSED** in part, and that this matter be **REMANDED** for further proceedings under Sentence Four.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and

42

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: August 12, 2015                          s/Michael Hluchaniuk
                                               Michael Hluchaniuk
                                               United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on August 12, 2015, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

                                               s/Tammy Hallwood
                                               Case Manager
                                               (810) 341-7850
                                               tammy_hallwood@mied.uscourts.gov

43